We have four cases set for argument this morning, the first one being Wang v. Drilling, Viking Drill & Tool, Inc., 24-2301. And Counselor Cunningham, I see that you've set aside three minutes of your time for rebuttal. Is that correct? Yes, Your Honors. You may start. Good morning, Your Honors. May it please the Court. My name is Kelly Cunningham. I'm representing Patent Owner Hangzhou Wang this morning. Mr. Wang has been an innovator in drill bit design for over 20 years and has many innovations. The innovation this morning, a patent that's being challenged, I'll refer to as his 583 patent. In the short amount of time I have here this morning, I'd like to focus on, first and foremost, the dependent claims 18 and 22 of the 583 patent, the overreach by Petitioner Viking and the errors made by the Board in invalidating claims 18 and 22 are particularly glaring. First, the drill bit, the twist drill bit references, Zhao and Bannister, neither of which disclose all of the recited claim elements of claims 18 or 22, by all means. The independent claim one starts with a shank and ends with the top blade, which is at the very tip, so it expands the entire drill bit, including the plurality of composite cutting blade groups on the cone portion. Each composite cutting blade group has a conical first step surface and a cylindrical second step surface. It also recites that in the series of composite cutting blade groups, the cylindrical second step surface, at least a one cylindrical second step surface, is immediately adjacent to the conical first step surface of the next cutting blade group. And then, of course, finally, claims 18 and 22 add to that that the plurality of cutting tips that's formed by these cutting blade groups are formed in a spiral pattern. So the board found it had substantial evidence to support a decision based on anticipation of the drill bits over Zhao. Can you address that? Yes, first, that's only as to the independent claims and some of the dependent claims, not claims 18 or 22. 18 and 22 required an obviousness rejection that I contend is not supported by substantial evidence. As far as the anticipation goes, there's evidence in the record that the Zhao reference does not have consecutive sequential cutting blade groups. It has a cutting blade group separated by a recessed group that is not cutting. So it goes cutting, recessed, and then possibly cutting. In fact, the drawings in Zhao only show a single cutting blade group on either side of the top blade. So it's our contention that the anticipation conclusion is wrong in that it doesn't show You have to overcome a waiver argument on the other side, right? Your anticipation arguments for Zhao were not raised in your patent owner response. Is that right? They were attempted to. It was, there's a, it's our also contention that it wasn't waived, that we attempted to provide that. It was provided late and the board refused to allow us to have that in. So, you know, relying more on form over substance. We'd like to actually get to the actual facts of the case and the evidence of record as opposed to the being barred from being presented that because we were just a day or two late in presenting that evidence. It was, it was stricken, but we, we rectified that on the SIR reply where we showed that the, that the witnesses for the, the expert witness for Viking admitted in his deposition, and we have that in our SIR reply, admitted in his deposition that there is in fact only a single cutting blade group on either side of the top blade if the Zhao drill bit is fed at the, at the expected feed rate. Did he say expected feed rate or low feed rate? He said, he refused to acknowledge what the feed rate is and, and, and repeatedly stated in the deposition that people normally drill faster than the speed, the, the expected speed rate, feed rate, but, but upon questioning him, I mean, it's about the best as you can do with an expert who's there. If you would agree that a higher feed rate, there would be, the limitations would be satisfied. I don't, I don't, I don't concede that. I mean, obviously if you... Well, you didn't make an argument that it's not true, right? Your argument rests solely on the idea that if these drill bits are spinning at a low enough feed rate, then not all the limitations would be met. Well, if the, if the recessed blades that separate the cutting blades from each other was, was sufficiently high enough, I mean, it was not sufficient recess, which is described as being recessed, it's certainly not intended to be doing any cutting. It doesn't even have a swarf separation groove on those recessed blades. So the Zhao reference has protruding cutting blades and then recessed blades. It does not call them cutting blades. It does not call the recessed blades cutting blades. It has protruding blades that have swarf separating grooves in them. It's clearly intended to both cut the material and then also break the material into half by these grooves. Very, that's the whole purpose of the, of the swarf separating grooves. And the recessed, the recessed blades do not have any swarf separating grooves on them. So it's clearly intended to not perform cutting like the, like the protruding blades. There's, there's quite a few issues that are addressed in, in your brief. But there's one that's, that's particularly important because I believe it affects your entire case. And that has to do with the 900 application. I want, I'd like for you to, to address that, but, but first, isn't it the case that that covers all the challenge claims? The 900 application discloses all of the, all of the elements of the, the claim. So this issue is dispositive to your case. It could, it's dispositive. And if, you know, the, the 900 application, the problem with the 900 application is that the axial relief that's described in it, and it's called, that the connecting lines are preferably spiral in, in shape. Whether that's a clear, you know, I believe, we contend that that's sufficiently clear to identify that in a preferred embodiment that the cutting blade groups are endowed with axial relief. And actually- But the question, right- What's that? The question is whether substantial evidence supports the board's finding that the 900 application does not disclose axial relief, right? That's the question. It is on review. The problem with that is that, as in the Syntrac-V-Sonitor case, axial relief is a predictable, is a predictable feature in drill bit design. And as such, that the written description requirement is substantially and considerably relaxed. So let me talk to you, when you're talking about an element, the fact that a drill bit could have an axial relief is predictable, well-known, would have been obvious. Our cases hold that you can't rely on obviousness or predictability, which is a portion of obviousness coming from KSR. You can't rely on that in order to show written description support, right? We've got a good number of cases that say that. You can rely on what a person's ordinary skill in the art, how they would read it, you think it's in there, the reference expressly discloses it, or that it's inherent, that it would necessarily be there, right? I agree. I believe that it is in there, that a person- So you're not relying, when you say predictability, or that it's well-known, or that's not enough. It has to be in the specification itself. Certainly- So where do you think it is? Certainly, the Syntrac case does point to the fact that if it's a predictable element, that the written description requirement is considerably relaxed. That's what Syntrac says. Oh, I see. In addition to that, that is basically saying that a person of ordinary skill would read that in the specification, and the specification does clearly talk about the lines that connect the flutes four, and we believe that the board completely got that wrong, that the lines connecting the flute four are, in fact, the lines that are in between the flutes four. Here's a flute, there's a flute, and in between the flute is a line that connects the two flutes, and be mindful, though, of course, the flute four is what we would call the grooves, the small grooves- I guess the concern I have is that this is a fact-finding question, how to interpret the phrase connecting lines of the flutes in the 900 specification. You have one understanding of it, which is the red line in your illustrated figure, but the board agreed with the petitioner that it refers to, it describes the angular positions of the flutes, and Dr. Schmidt testified to that fact, and so the problem for you is, if this is a fact-finding question, and it is, then you have to explain to us why it was unreasonable for the board to have sided with the petitioner's view of how to understand this phrase in this 900 specification. Well, if you look to the board's position on page 28 of the appendix, the board, you know, sua sponte, came up with its own decision on how there couldn't be axial relief in the 900 application, because it described in a footnote on page 28 that if you were to have a transparent drill bit, then if axial relief was in, you know, in the front set of composite cutting blade groups, and there's axial relief on the back side, then they would not be parallel, which is something that's stated in the 900 application, but clearly both Viking and Wong agree that we weren't talking about parallel with respect to opposite sides of the drill bit, so the board completely got that wrong. They basically said there couldn't be axial relief in the 900 application because of this, because it would cause the front composite cutting blade groups to be not parallel with the back composite cutting Nobody argued that. You're into your rebuttal time. Would you like to say that? I would like to reserve. Yes, sir. We'll be showing you back to the city manager. Thank you. Counselor Vandenberg. Thank you, your honor. May it please the court. The alleged invention of the patent was the addition of steps to the tip of a traditional twister. That was not new. Viking filed this IPR based on a number of references showing just such a step tip drill. The board found all of the challenged claims unpatentable on multiple independent grounds, and Wang has not shown that the board erred on any of those grounds, much less all of them, which is what it would need to obtain some relief here. Could you start by addressing this footnote 11 that was just raised by opposing counsel? I think the important thing to keep in mind there is that the board was focusing on two things. One was parallel and the other was symmetric. The priority case, the 909 application, says that they are both parallel and symmetrically arranged. That's what caused the board to say, okay, I've got to look at the one on one side and the one on the other. They basically concluded, look, it can't be talking about axial relief because if this one's angled, it's no longer parallel and symmetric to the one back here. But I will also say this. The board ultimately, it did analyze and give reasons why Wang was wrong for saying it refers to axial relief. But the more important thing is that the board analyzed what they think it does mean and concluded that in their opinion, as the fact it's referring again to that, to the ends of the what are called flutes in that case, spiraling along the main flute. You're talking about the connecting lines phrase? Correct. That's what they interpreted that phrase to mean and that makes sense. They looked at it in conjunction with the one time where it says, well, they can be adapted along a radian or, and this is the they are the connecting lines form a spiral. Let me make sure I get that language exactly right. Connecting lines of the flutes form a spiral structure. And they said, well, it makes sense that the thing that's disclosed, you would expect a preferable one to be disclosed. And that's the connecting lines form a spiral structure. And they're saying, alternatively, the less desirable design not shown in the application, but well known in the art, is that they could be adapted to a radian at the same radial position, essentially saying you could have a straight flute. And they went in and cited the references showing that both straight flutes and spiral flutes were known. And so that's why that ultimately made sense. Can I ask you another question? Yes. I heard that this position, like in footnote 11, was developed by the board to respond to. There's no support other than the disclosure in the application itself. Is that correct? Obviously, the evidence is there. It's they're reading the reference. I don't believe that we had made that specific argument. Now, two things about that. One is that this court's precedent does say, look, you can't come up with a completely new grounds. You can't come up with a new combination. But the board is allowed to apply its own analysis to the evidence. And that's specifically Arthrex versus Smith and Nephew, 935 F3rd 1319, distinguishing the cases from this talking about the board not coming up with new grounds. But again, I'll go back to the more important point on this, is that that was an analyzing why Wang's argument was wrong. But they independently analyzed the language and concluded what they think it most likely means. And that was 100% based on and supported by our expert's testimony. I don't think that I have anything else to add specifically on that particular ground, that a ground does apply to all claims and is alone enough to support the board's finding of unpatentability. But I do want to go back to some of the other grounds. And if I could talk about first anticipation by the Zhou reference. You know, one of the things that we have seen throughout this proceeding is sort of shifting positions from Mr. Wang. And this is one of them. When we were in front of the board, he made only one argument, identified only one limitation that wasn't met in Zhou relative to the independent claims. And that was, well, that Zhou didn't have curved major and minor cutting surfaces. The board correctly found that the claims don't require that. There's no requirement on the claims for that. And Wang hasn't appealed that. It's not before your honor. Instead, they raised these additional arguments that were not raised below. And I want to talk about specifically, I think all of their arguments really ultimately relate to this issue of, well, Zhou has asymmetric cutting edges. So you have a depressed, what do you call it, a sunken edge. And they say, well, it's not actually a cutting edge because it wouldn't do any cutting. On the waiver issue you raised, Judge Chen, I think it's really important to keep in mind that in their surreply brief, when they raised this issue, we objected because it was new. They're identifying new claim limitations. And Wang agreed to file an amended surreply where he redacted out the statements referring to claim limitations not being met. And it's a little bit confusing when you look at the record. But what you'll see is that the testimony from our expert, from Dr. Schmidt, talking about the feed rate, well, it depends on the feed rate, that was kept in because he claimed that it was relevant to just some general statements in the brief. But tying it to a claim limitation, saying that claim limitation is not met, he struck that voluntarily from his surreply brief because it was new and improper. And having consciously made the decision to withdraw that argument, it's inappropriate to raise it now on appeal. It's also, of course, wrong. It ultimately turns on the feed rate. And if the feed rate is at a higher speed, then it is going to engage. And of course, Zhou itself talks about the cutting surfaces having depressed and elevated portions. And so Zhou itself is indicating that those are cutting surfaces. Obviousness based on Bannister. I'm going to skip the independent claims. Well, the sole issue for the independent claims was the first surfaces being conical. The board analyzed that issue. It was a routine obviousness analysis. We relied on two references, Zhou and Welty, for showing that feature. But we could have relied on basically any stepped drill reference showing those conical surfaces. The board found there was a reason to make that change. And it's a classic motivation to combine. It's obvious. We heard today there's been a lot of change to focus just on claims 18 and 22. But again, kind of a routine obviousness analysis. The issue, of course, is that in Bannister and in Zhou, the cutting edges are actually straight. They're formed right at the tip and so they're straight. But as our expert pointed out, it's well known that you can have the flutes be spiral all the way to the tip, resulting in those cutting edges being spiral. The board agreed and the board agreed that there was a motivation to do so because spiral flutes are known to be better at removing cutting chips. Your Honor, if you have any other questions, I am happy to answer them. But again, I think this was a very factual-based appeal. And the board's findings are all subject to deferential review and they did not make any errors. Thank you. Thank you. Mr. Cunningham, you have three minutes. Thank you, Your Honor. First, to address his last issue is that it should be noted that none of the twist drills of record had any spirally arranged cutting tips. He admitted that. Both Zhou, as he pronounces it, and Bannister both had straight cutting tips, straight lines, straight as an arrow aligned through any cutting tips they have there. It's very interesting that if swarf removal is so well known that no twist drill in the entire record has, that if swarf removal based on cutting tips that are in a spiral orientation is really well known, none of the twist drills have that. And the twist drills are the only ones that worry about swarf removal. Step drills don't worry about swarf removal because they're just drilling through really thin sheets of metal. They have multiple diameters on one drill bit so that if you wanted a quarter inch or a half inch or larger, you could decide how far to push your step drill through. There's no swarf removal worry about twist step drills. The twist drills of record all have straight cutting tips. And also they all have helical flutes as well. So the fact that there are helical flutes does not mean you have spirally arranged cutting tips as shown in both Bannister and Zhou. And their expert is not a person of ordinary skill in his art. He admitted he's never designed a single drill bit in his career. In fact, if you compare the person of ordinary skill in the art definition, I believe it's at appendix 00017, to their expert Schmitt's own testimony at 08578, that he is not a qualified person of ordinary skill in the art. Did you move to exclude him? We did not. But I would move to have his testimony not be taken at whole cloth unless he's supporting it by some sort of evidence. And so often he's not supporting his testimony by any evidence. The swarf removal of helical... You're saying you did move or you're currently moving? I'd be happy to currently move, but primarily I'm saying you should discount his testimony and understand why on earth is the board taking his statements that aren't supported by any evidence or record so uncritically. Because my expert has been doing drill bit design for over 35 years and he's, in my opinion, the foremost expert on drill bit design in the entire country from Michigan's Technological University. However, if you look at that, having a helical chip removing flute, or two of them typically, most have two, does not define that you... That might help remove swarf and the chips. That helps remove the chips, of course. But it doesn't... But that the cutting tips being in a spiral orientation, no one has shown that that is the same. That's just cutting small pieces out of the material at various positions, but it's the helical flute that removes that. And you can have helical flutes without having spirally patterned cutting tips. So that's why 18 and 22 are so important. They're not invalidated by the evidence or record. They just aren't. He says radian is a position... You're out of time. Would you like to conclude? Yeah. So the last thing I would like to say is radian, despite what the board said, radian is not a position around a circle. It's an arc. Radian is an arc. There are two and change radians in any circumference. That's what the definition of radian is. It's not a position. It doesn't define that everything's along a certain line along a cone. It's an arc. And if you read the application, you can tell they're talking about the arc. It adapts to the arc, adapts to the radian of the flank. Okay. Thank you. Thank you. We thank the parties for their arguments. We thank the parties for their arguments and the case will now be taken under submission.